JUDGE TORRES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIK FORMAN,

                Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; JULIE NARIMAN, PRINCIPAL OF HIGH SCHOOL OF LANGUAGE AND INNOVATION, in her official and individual capacity; YAN WANG, ASSISTANT PRINCIPAL OF HIGH SCHOOL OF LANGUAGE AND INNOVATION, in her official and individual capacity,

                Defendants.

---

**COMPLAINT**

19-Civ.-___

**JURY TRIAL DEMANDED**

**19 CV 8156**

Plaintiff ERIK FORMAN, as and for his Complaint, against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of 42 U.S.C. § 1983 based on retaliation for First Amendment protected speech for his union activities as a vocal United Federation of Teachers (hereinafter "UFT") Chapter Leader while employed as a teacher for the New York City Department of Education (hereinafter "NYCDOE") at the High School of Language and Innovation (hereinafter "the School").

2. The conduct complained of in this action involves Defendants' coercion, retaliation, and interference with Plaintiff's exercise of his First Amendment rights as the UFT chapter leader after and while advocating on behalf of teachers and students at the School. The retaliatory conduct following his protected speech includes, but is not limited to, the issuance of adverse performance evaluations, surveillance, interrogation, a disciplinary summons and interview, threats, elimination of a part-time employment position and resultant loss of income, pressure to abandon employment at the High School of Language and Innovation, and a "Developing" Advance Overall Rating for the 2015-16 School year that put him in the bottom 4% of all teachers statewide.

3. Plaintiff was further the victim of a hostile work environment based on retaliation by the Principal for the exercise of First Amendment rights as union Chapter Leader.

4. Plaintiff seeks economic, compensatory, and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

6. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

7. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

8. Plaintiff Erik Forman is a resident of Bronx County and the State of New York.

9. At all times relevant herein, Defendant New York City Department of Education is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*

10. At all times relevant herein, Defendant Julie Nariman was the principal of the High School of Language and Innovation, a high school in the Bronx, within the New York City Department of Education, and is sued in her official and individual capacity.

11. At all times relevant herein, Defendant Yan Wang was the assistant principal of the High School of Language and Innovation, a high school in the Bronx, within the New York City Department of Education, and is sued in her official and individual capacity.

## STATEMENT OF FACTS

12. Plaintiff was an English as a Second Language (ESL) teacher within Defendant New York City Department of Education (hereinafter "NYCDOE") since 2014 until his resignation in June 2019.

13. Since on or about June 2014, Plaintiff taught at the High School of Language and Innovation (hereinafter "the School"). The School is located at 925 Astor Ave, Bronx, NY 10469. The School serves a population of approximately 80 percent immigrant students who are learning English (hereinafter "English Language Learners").

14. Instruction of English Language Learners is regulated by the NYCDOE and New York State Education Department (hereinafter "NYSED") regulations, and is mandated by Title VI of the Civil Rights Act of 1964 and Elementary and Secondary Education Act of 1965 and its amendments, and is informed by the U.S. Supreme Court decision, *Lau v. Nichols,* 414 U.S. 563 (1974).

15. At the end of the 2014-2015 school year, on or about June 4, 2015, Plaintiff was elected as the Chapter Leader for his union, the United Federation of Teachers (hereinafter "UFT"), at the School, with a term to begin in July 2015.

16. Plaintiff had no prior disciplinary issues with the school's administration before being elected as Chapter Leader.

17. Plaintiff received overall "Effective" ratings from Principal Nariman for his teaching performance in the 2014-2015 school year.

18. Beginning in July 2015, Plaintiff was very outspoken in advocating for other teachers and students against Defendant Principal Nariman's unlawful interference in Union affairs, mismanagement of the School, violation of the collective bargaining agreement, violation of New York State Education Department regulations, serious safety issues in the School that resulted from mismanagement and violation of NYCDOE regulations and New York State law, violations of the above-cited federal legislation protecting the rights of English Language Learner students, and violation of his First Amendment rights.

### First Amendment Associational Anti-Union Animus and Retaliation

19. In Spring 2015, Plaintiff announced that he planned to run for UFT Chapter Leader at the School because the current Chapter Leader was not trusted by the staff because of his compromised relationship with the school administration. Administrators tried to convince Plaintiff not to run, and attempted to convince other untenured teachers at the School who were seen as favorable to the administration to run for UFT chapter leader against him. This followed a pattern in previous years where the administration had induced particular teachers to assume the Chapter Leader position as a "favor" to the Administration.

20. After Plaintiff announced plans to run for Chapter Leader, Defendant Nariman gave Plaintiff the lowest teaching evaluations he had ever received on or about May 21, 2015, in retaliation for his decision to exercise his First Amendment and associational rights.

21. On or about June 4, 2015, Defendant Nariman would not leave the room during the Union election for Chapter Leader until asked by Plaintiff to avoid inappropriate management interference and surveillance of the Union election process.

22. Plaintiff was elected UFT Chapter Leader by a vote of 23-6 of Union members at the School on or about June 4, 2015, defeating a candidate who had been asked to serve by the school administration.

23. Beginning in September 2015 and continuing through the entire school year, Plaintiff advocated for the School's students by convening Union meetings on a regular basis and bringing issues to the Defendant Nariman in monthly Consultation Committee meetings. Consultation Committee meetings are mandated by the collective bargaining agreement between the NYCDOE and UFT to resolve issues between labor and management at the school level. Under the collective bargaining agreement, the Chapter Leader convenes the meeting and sets the agenda, and the principal is required to attend.

24. In Consultation Committee meetings beginning in September 2015 and continuing through the entire school year, Plaintiff pointed out that Defendant Nariman was violating the Chancellor's Regulations and regulations of the New York State Education Department by not providing required ESL instruction to English Language Learners. Although the school served a population of approximately 80% English Language Learners, at the beginning of the 2015-2016 school year, there were no ESL classes offered. This is a point-blank violation of NYSED Commissioner's Regulation Part 154 (hereinafter "C.R. Part 154") and students' rights under the Civil Rights Act of 1964 and Elementary and Secondary Education Act of 1965 and its amendments.

25. In monthly Consultation Committee meetings, Plaintiff pointed out that the Defendant Nariman was violating the NYCDOE Chancellor's Regulations by failing to collaborate on creating a Safety Plan. Further, Plaintiff advocated on behalf of others by pointing out that the Defendant was creating an unsafe environment for students by not staffing a Dean position that the staff had approved through an School-Based Options vote. Under the collective bargaining agreement, the Union chapter may vote to approve the creation of non-instructional positions and scheduling changes to serve the School's needs in a School-Based Options vote. In addition, Plaintiff also repeatedly spoke on behalf of others by informing the Defendant Nariman in Consultation meetings that she was violating the collective bargaining agreement by failing to provide curriculum to teachers, which massively increased teacher workload and reduced the quality of instruction for students, among other staff concerns.

26.     In September 2015, Defendant Principal Nariman pressured the Plaintiff to resign from his position as Community Outreach Lead in retaliation for taking on the position of Chapter Leader.

27.     In September 2015, Defendant Principal Nariman pressured Plaintiff to give up his professional period (contractually provided to UFT Chapter Leaders for conducting union business) in order to co-plan with his co-teachers, stating that he had to "decide what my priorities were," implying that fulfilling the contractual responsibilities of the Chapter Leader position in advocating for others would have an adverse impact on his teaching career.

28.     At the beginning of the 2015-16 school year, Defendant Principal Nariman began retaliating against Plaintiff using the Annual Professional Performance Review (hereinafter "APPR") evaluation process, giving him low ratings in his first observation on October 26, 2015.

29.     On or about November 23, 2015, Defendant Principal Nariman violated NYCDOE Chancellor's Regulation C-30, which gives the Union the right to appoint members to a committee that reviews candidates for assistant principal positions. She further violated Chancellor's Regulation C-30 by cutting Plaintiff out of the process and appointing her own handpicked Union members to the committee herself without the approval of the Chapter Leader. Plaintiff consulted with other members of the UFT and expressed their objections to Defendant Nariman's violation of Chancellor's Regulation 30 via email and face-to-face meetings.

30.     The administration's refusal to adequately address safety concerns in the school came to a head on March 28, 2016, when one student attempted to stab another student with a pair of scissors in the middle of a crowded school hallway with inadequate supervision present. The stabbing was prevented only by Plaintiff physically restraining the student.

31.     Defendant Principal Nariman intentionally misclassified the attempted stabbing as a B-45 infraction under the NYCDOE Discipline Code, defined as "Creating a substantial risk of serious injury by either recklessly engaging in behavior, and/or using an object that appears capable of causing physical injury (e.g., lighter, belt buckle, umbrella, or laser pointer)" rather than reporting the incident as what it was, a B-53 infraction, defined as "Using extreme force against or inflicting or attempting to inflict serious injury upon students or others" in order to avoid reporting the incident according to protocol. The student who attempted to stab the other

was given a short suspension and then brought back to school a few days later with no attempt at conflict resolution, mediation, or restorative justice.

32. When Plaintiff asked about the administration's response to the incident, Defendant Principal Nariman claimed that there had been no attempted stabbing and that the student had merely been waving scissors around, despite the fact that several witness statements corroborated the Plaintiff's account. In the face of a blatant refusal to take staff concerns about safety seriously or adequately respond to the climate of increasing violence and disorder in the School, Plaintiff spoke with other staff about their safety concerns, and raised objections to how the Defendant Nariman handled the issue.

33. Demonstrating animus to the Union and to Plaintiff's advocacy on behalf of others, on or about March 31, 2016, Defendant Principal Nariman discouraged staff from participating in union activities by stating in a school-wide staff meeting that the UFT can be "divisive," that this harms the school, and that if bargaining unit members have problems, they should bring them directly to the administration. This had the adverse impact of chilling participation in the UFT and restraining staff participation in protected First Amendment speech and association at the school for the remainder of the school year. In the same meeting, Defendant Principal Nariman further discouraged staff from expressing negative views of the School or administration on the annual School Survey administered by the NYCDOE because the survey results are "read by parents" who might choose to send their children to a different school if teachers revealed issues with safety and curriculum at the School.

34. Faced with the continued refusal of the administration to take seriously the safety issues in the school and create a supportive environment for students, Plaintiff filed a Safety Complaint with the Defendant on April 8, 2016, signed by eight tenured teachers over violations of the NYCDOE Chancellor's Regulations related to the administration's mishandling of the attempted stabbing of one student by another. The Safety Complaint called for a restorative justice process, mediation, and counseling for the students involved in order to avoid an escalating spiral into violence at the School.

35. Defendant Principal Nariman and Assistant Principal Wang took a series of retaliatory actions against Plaintiff including a summons to a disciplinary meeting on about April 6, 2016, increased surveillance, interrogation of staff, a retaliatory teaching observation, and other adverse actions that continued into September 2016. The adverse actions caused emotional distress, chilled participation in the Union, damaged the Plaintiff's career and reputation by resulting in a "Developing" APPR score, and ultimately Defendants pressured him to leave employment at the School.

36. These adverse actions caused the Plaintiff immediate monetary losses in that he was retaliated against on the basis of his advocacy for others and was prevented from accessing opportunities that carried additional pay, such as attending leadership team meetings as Community Outreach Lead, and was prevented from participating in the Personnel Committee despite the fact that such participation by the UFT chapter leader is mandated by the collective bargaining agreement.

37. Continuing the pattern of retaliation, on or about April 12, 2016, Defendant Principal Nariman again stated during a school-wide professional development meeting in front of the entire staff that if staff had a problem, they should bring it directly to the administration, implying that bringing it to the union is not the right thing to do. She also emphasized that the UFT chapter should not divide the staff from the administration, implying that filing grievances or expressing complaints is not acceptable.

38. On or about April 12, 2016, Defendant Principal Nariman violated the collective bargaining agreement and employee rights to concerted activity by failing to respond to a request for a Step 1 grievance meeting about the Safety Complaint staff members had filed, and instead brought in the Bronx Borough Safety Director Vincent DiGaetano to facilitate a meeting with a small number of staff members in which he defended the administration's conduct. Principal Nariman gave no notice that the meeting would be taking place, preventing Union members of the Consultation Committee from attending.

39. The escalating spiral into violence feared by School staff and expressed by Plaintiff as a Safety Complaint to the school administration came to pass on April 13, 2016, when a new altercation between the two students involved in the attempted stabbing sparked a

massive brawl in the School cafeteria that continued on the street in front of the School involving around 40 students split along ethnic lines. The brawl resulted in the arrest of nine students and hospitalization of five NYCDOE employees and police officers. This terrible outcome was a direct result of the administration's failure to follow safety protocol or respond to the Safety Complaint by seeking a resolution of staff concerns, as mandated by the Chancellor's Regulations.

40. The climate of violence and disorder in the school, as well as the administration's continued failure to provide curriculum or comply with state mandates for ESL instruction to the School's recent immigrant student population, resulted in low test scores across the board on the New York State Regent's Exams in June 2016, damaging the academic careers of hundreds of students and the teaching careers of the school staff.

41. On or about April 18, 2016, Principal Nariman increased scrutiny of the Plaintiff's teaching in retaliation for his advocacy on behalf of others. On April 19, 2016 Principal Nariman conducted a full-period observation of his teaching. After the observation, Assistant Principal Shira Wrightman approvingly told him that the lesson "had everything" that the administration was looking for.

42. On or about May 12, 2016, Plaintiff received the observation report for the April 19, 2016 observation, with the lowest ratings he has ever received on any classroom observation (8 Developing's and 2 Effective's), as well as the use of several decontextualized comments to discredit him as a teacher. This as well as a similarly retaliatory Observation in Fall 2015 resulted in an overall "Developing" rating for the year.

43. Through May and June 2016, Principal Nariman violated NYCDOE Chancellor's Regulations and the UFT contract by failing to consult with the Union and excluding the Plaintiff from the contractually-mandated Personnel Committee, in retaliation for his participation in protected First Amendment activities. On or about June 2, 2016, after the Plaintiff asked to be included on the Personnel Committee as the UFT Chapter Leader is contractually entitled to, Principal Nariman agreed. However, after the first set of interviews, she once again excluded Plaintiff from participating in the interview process beginning at least on June 27, 2016.

44. On or about June 6, 2016, Defendant Principal Nariman eliminated the Community Outreach Lead position Plaintiff had held in the 2015-2016 school year in retaliation for his advocacy on behalf of others. This resulted in loss of pay, as he had been paid per session (overtime) for this work over the past year. When Plaintiff proposed re-establishing the position in July 2016 in order to create an internship program for students, she cited student test scores and the "Developing" rating she had assigned him as a pretext for disqualifying him.

45. On or about June 10, 2016, Defendant Principal Nariman continued her retaliation against Plaintiff by granting him none of his teaching preferences for his program for next year, assigning him to standalone ESL classes and refusing to compromise by adding integrated co-teaching to his tentative schedule.

46. On or about June 28, 2016, Defendant Principal Nariman delayed sharing the school budget beyond the mandated five-day deadline, and then invited several UFT members who are not on the consultation committee to the budget meeting, without consulting with Plaintiff as the school Chapter Leader.

47. On or about July 6, 2016, Defendant Principal Nariman began refusing to communicate with the Plaintiff directly, in violation of the UFT contract, forcing him to email assistant principal Yan Wang about UFT business instead.

48. On or about August 30, 2016, Defendant Principal Nariman and Assistant Principal Yan Wang deleted Plaintiff's staff email account and told him on August 31, 2016 "you don't work here any more" after he had been approved to take a one-year unpaid leave of absence from the School to teach ESL at the City University of New York for a lower salary in order to avoid continued retaliation from Nariman and Wang.

49. On September 1, 2016, Plaintiff received an overall "Developing" rating as a result of retaliatory teaching evaluations over the 2015-2016 school year, which put him in the bottom 4% of all teachers statewide based on that year's data.

50. On or about September 2, 2016, Principal Nariman stated in writing that she did not want Plaintiff to return to the School after his one-year unpaid leave would end in fall 2017, seeking to get Plaintiff to leave the School in retaliation for his advocacy on behalf of others in the preceding school year.

51. As a result of Defendant Principal Nariman's retaliatory "Developing" rating that put him in the bottom 4% of all teachers statewide, Plaintiff was unable to secure a teaching position in the NYCDOE at the end of his one-year unpaid teaching leave in Summer 2017, receiving only one interview and no job offers despite applying to schools across the Bronx amidst a teacher shortage.

## FIRST CLAIM FOR RELIEF

### (Claims for Violation of 42 U.S.C. Section 1983—First Amendment Retaliation against all Defendants causing Constructive Discharge)

52. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

53. Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section 1983, by retaliating against Plaintiff for advocating for other members and students as a Union Chapter Leader in violation of the First Amendment.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows:

A. A declaratory judgment that Defendant(s) are in violation of 42 USC Section 1983 for First Amendment retaliation;

        B.    Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to 42 USC Section 1983,

        C.    Awarding Plaintiff costs; and

        D.    Such other and further relief as this Court may deem just and proper.

Dated:    New York, New York  
            August 30, 2019

                    By: _____  
                         ERIK FORMAN  
                         Plaintiff pro se  
                         2454 Hughes Avenue, #3C  
                         Bronx, NY 10458  
                         erik.forman@gmail.com  
                         (612) 598-6205